IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN E. S. BEASLEY and MARTHA S. BEASLEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:17-CV-92-WKW [WO] |
| 500 FINISHES CORPORATION and JOHN P. CARROLL, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case is about the house that Defendant 500 Finishes Corporation did not finish. Plaintiffs Steven E. S. Beasley and Martha S. Beasley hired 500 Finishes, through its agent Defendant John P. Carroll, to build their house. Construction did not go as planned. When the funds allotted in the contract were depleted — and then some — and the house still was not finished, the Beasleys and the builders parted ways. The Beasleys then learned that not only was their house over budget and under built, but that portions of the house that had been constructed were not up to par. They filed suit in Alabama state court, and 500 Finishes and Mr. Carroll removed to this court, before which is Defendants' motion for partial summary judgment (Doc. # 20), as well as various motions regarding evidentiary submissions related to that motion (Docs. # 24 & 26). Upon careful consideration,

and after complete briefing (Docs. # 21, 22, 23, 25, & 27), the motion for partial summary judgment will be granted in part and denied in part, Plaintiffs' motion to allow a supplemental expert witness disclosure (Doc. # 26) will be granted, and Defendants' motion to strike (Doc. # 24) will be construed as a Rule 56(c)(2) objection and sustained in part and overruled in part.

## I.  JURISDICTION AND VENUE

Diversity jurisdiction is exercised pursuant to 28 U.S.C. § 1332(a). Plaintiffs are citizens of Alabama, Defendants of Florida.  (Doc. # 1, at 3.) Defendants, who removed this action from Alabama state court, have met their burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).  Venue is uncontested.

## II.  STANDARD OF REVIEW

As the parties moving for summary judgment, Defendants carry the burden of demonstrating "that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and makes all reasonable inferences drawn therefrom, in the light most favorable to Plaintiffs as the nonmoving parties.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The summary judgment movant "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Id.* Alternatively, movants like Defendants who do not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If Defendants meet their burden, the burden will shift to Plaintiffs to establish, with evidence beyond the pleadings, that a genuine dispute material to each of their claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact means that there is evidence produced that would allow a reasonable fact finder to return a verdict in the non-moving party's favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted).

# III.  BACKGROUND

Mr. and Mrs. Beasley bought a plot of land in Tallassee, Alabama, in December 2013.  The following November they contracted with 500 Finishes to build a house on that land for $236,186.  Mr. Carroll signed the contract on behalf of 500 Finishes and oversaw construction.  According to the contract, the work was to be "substantially complete on or about 6/20/2015."  (Doc. # 1-1, at 22.)

Construction began near the end of January 2015.  It took longer, and became more expensive, than anyone planned.  Though the parties dispute the exact nature of the events that then unfolded (*compare* Doc. # 21, at 4, *with* Doc. # 22, at 2), here is how Mr. Beasley described what happened:

> The contract calls for Mr. Carroll to build our home in a workmanlike manner, and we were to pay him $236,186.00.  My wife and I obtained a construction mortgage to pay for the home, after which Mr. Carroll began construction on the home. . . .  We were many months into construction, and our construction mortgage was exhausted; however, Mr. Carroll was nowhere near finished with construction.  I informed Mr. Carroll that we were out of money in our construction account, and we needed to get some things resolved about the home, as I did not have an unlimited supply of money to put into the construction of our home.  Mr. Carroll stated that he needed an additional approximately $50,000.00 to finish the home.  I asked him whether he would be able to finish the job for another $50,000.00, and he assured me that he could.  Based on that representation, I obtained an additional $50,000.00 from the bank to complete the construction.
>
> More months passed, and we were still not finished with construction.  At that point, my additional funds that I had obtained

had been depleted to about $20,000 with no end to the construction in sight. At that point, we were nearly one (1) year beyond the date set out in the contract for the completion of construction. My wife and I told Mr. Carroll that, at that point, we did not have additional money to put into the house, particularly because I had no assurance that the home would be completed within a reasonable amount of time, and we had no assurance as to how much money it would take to finish the house. At the conclusion of the communications, Mr. Carroll could not give me a completion date for the home if [*sic*] even if I could obtain additional funds, and he was unable to give me any statement of how much money it would take to complete the home.

At that point, my wife and I discussed the matter, after which we informed Mr. Carroll that we were not going to put any more money into the home, as we were already approximately $30,000.00 over budget and no end in sight. Just before construction ended, Mr. Carroll brought some interior cabinet doors to the house. The quality of the work done on the cabinet doors was terrible. At that point, we had paid him everything we were required under the contract to pay and more, and we had no more money to put into the house, which we told Mr. Carroll. Mr. Carroll did not respond. He simply never came back to do more work. He offered to purchase the house from us for the contract price of $236,186.00, which did not include the purchase price for the land, which was in excess of $60,000.00, or the supplemental loan of $50,000.00, which would have been a tremendous loss to us.

(Doc. # 22-2, at 7–8.)[1]

Defendants offer a slightly different, though not necessarily conflicting, interpretation. They note that "[c]onstruction by 500 Finishes progressed until

---

[1]  Defendants object to the admissibility of this affidavit. (Doc. # 24.) As explained below, the court concludes that the evidentiary submission meets the requirements of Rule 56 and may be relied on. But even if the court excluded Mr. Beasley's affidavit from consideration, the general version of events agreed to by both parties and substantiated by other evidence is similar enough that reliance on the affidavit is not dispositive of any issue before the court. (*See, e.g.*, Doc. # 21, at 4; Doc. # 21-4, at 11; Doc. # 21-5, at 9.)

Plaintiffs believed the home could not be completed for the remaining funds available," and that "[u]ltimately, Plaintiffs terminated the relationship and did not allow 500 Finishes to complete the construction of the home." (Doc. # 21, at 4 (citations omitted).) All parties agree that "[t]he construction of the home was not completed by 500 Finishes." (Doc. # 21, at 4.)

Once the Beasleys and 500 Finishes parted ways in the spring of 2016, the Beasleys engaged at least two home inspectors to inspect the house. The inspectors found numerous flaws in construction, and one concluded that "it may not be possible to bring all components of the structure into conformity with today's standards." (Doc. # 22-4, at 9.)[2] The Beasleys eventually hired a different contractor to complete the house. (Doc. # 22-4, at 16 n. 6.)

The Beasleys also filed suit against 500 Finishes and Mr. Carroll. In their complaint filed in Alabama state court, they alleged twelve claims for relief: (1) breach of contract, (2) breach of warranty of workmanlike construction, (3) breach of warranty of habitability, (4) negligent construction, (5) wanton construction, (6) negligent hiring, training, and/or supervision, (7) wanton hiring, training, and or

---

[2] Consistent with the ruling below on Defendants' motion to strike, the court does not rely on Brent Garrett's inspection reports in recounting these facts.

supervision, (8) misrepresentation of a material fact, (9) suppression of material facts, (10) deceit, (11) fraudulent deceit, and (12) continuing fraud. (Doc. # 1-1.)

Following removal and discovery, Defendants now move for partial summary judgment.

## IV. DISCUSSION

Defendants seek summary judgment on all claims against Mr. Carroll, as well as all claims against 500 Finishes except for breach of contract (count 1) and negligent construction (count 4). (Doc. # 21, at 5.) They also contest the admissibility of two evidentiary submissions the Beasleys reference and attach in their opposition to Defendants' motion. (Doc. # 24.) Because the resolution of the latter motions will determine what evidence the court will consider in determining the former, the court will address the evidentiary issues first.

## A. Motions to strike and supplement

In their brief in opposition to Defendants' motion for partial summary judgment, Plaintiffs attach, among other documents, (1) an affidavit by Mr. Beasley, and (2) inspection reports of the house by Brent Garrett. (*See* Doc. # 22-2, at 6; Doc. # 22-4, at 27–47.) Defendants move to strike the exhibits as improper and inadmissible. (Doc. # 24.) The Beasleys have responded to that motion, and also move to allow a supplemental expert witness disclosure to cure any defect in

the late submission of the Garrett reports.  (Docs. # 25 & 26.)  Defendants oppose the supplemental disclosure.  (Doc. # 27.)

Although Defendants seek to strike the evidentiary submissions they contend are inadmissible, Congress provided for a different procedure when it amended Federal Rule of Civil Procedure 56 in 2010.  Before that amendment, "parties properly challenged evidence used in a summary judgment motion by filing a motion to strike."  *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013). But Rule 56(c)(2) itself now provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Under this procedure, once an objection is made, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments.  Thus, because "[t]he plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of the summary judgment procedure, rather than a separate motion to be handled preliminarily," *Campbell*, 546 F. App'x at 879, the court will construe Defendants' motions to strike as Rule 56(c)(2) objections.  *See, e.g.*, *Samuels v. City of Birmingham*, No. 2:15-cv-1374-MHH, 2017 WL 4340494, at *6 (N.D. Ala. Sept. 29, 2017) (doing same).

### 1.     *Beasley Affidavit*

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Defendants contend that Mr. Beasley's affidavit does not pass muster because it fails to "affirmatively state that the affiant is competent to testify."  (Doc. # 24, at 2.)  But here again the rules have changed.  While Rule 56(e) once required an affiant to "show affirmatively that [he or she] is competent to testify to the matters stated therein," Fed. R. Civ. P. 56(e) (2005 ed.), the current version has dropped the requirement that competence be shown "affirmatively," *see* Fed. R. Civ. P. 56(c)(4).

In any event, Mr. Beasley affirmed in his affidavit that he has "personal and direct knowledge" of the facts and that his narrative of events is "true and correct." (Doc. # 22-2, at 8.)  That narrative recounts the process that he and his wife personally went through in hiring and dealing with Mr. Carroll and 500 Finishes. It is clear that Mr. Beasley both has personal knowledge of the events and is competent to testify about them.   Accordingly, the court is satisfied that the requirements of Rule 56(c)(4) have been met.

Defendants' next line of attack is to argue that Mr. Beasley contradicted himself in his affidavit as compared to his deposition testimony. Defendants claim that "[t]he deposition testimony regarding the termination [of Defendants as contractors] is completely different from the affidavit testimony and establishes that the Beasleys terminated 500 Finishes from the job and did not allow 500 Finishes to complete the construction of the house." (Doc. # 24, at 4.) In contrast, Defendants say, Mr. Beasley's affidavit testimony "impl[ies] that 500 Finishes simply did not return to the project and, thus, the failure to complete the construction of the home . . . was due to 500 Finishes' actions." (Doc. # 27, at 3.)

Here are the relevant accounts:

*Mr. Beasley's affidavit testimony*:

Just before construction ended, Mr. Carroll brought some interior cabinet doors to the house. The quality of the work done on the cabinet doors was terrible. At that point, we had paid him everything we were required under the contract to pay and more, and we had no more money to put into the house, which we told Mr. Carroll. Mr. Carroll did not respond. He simply never came back to do more work. He offered to purchase the house from us for the contract price of $236,186.00, which did not include the purchase price for the land, which was in excess of $60,000.00, or the supplemental loan of $50,000.00, which would have been a tremendous loss to us.

(Doc. # 22-2, at 8.)

*Mr. Beasley's deposition testimony*:

Q. I mean, Mr. Carroll and 500 Finishes did not walk off your job and say we're not completing this house, did they?
A. No, he did not.
Q. You and your wife decided you did not want 500 Finishes to complete your house, correct?
A. We could not see a way for him to finish it.
Q. So you terminated the relationship with 500 Finishes and Mr. Carroll?
A. We had paid him in excess of his contract along with the items that were on the bill – well, the contract. And we saw that we were expending funds that no longer needed to be spent toward him.
Q. So you terminated the relationship –
A. Yes.
Q. – With Mr. Carroll and 500 Finishes?
A. Yes. We asked him to leave.

(Doc. # 21-4, at 11.)

Suffice it to say, the discrepancies Defendants see, if discrepancies they be, do not meet the high standard necessary for this court to disregard the affidavit testimony altogether. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) ("[W]e may *only* disregard an affidavit that contradicts, without explanation, previously given *clear* testimony. The earlier deposition testimony must consist of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." (citations and internal quotation marks omitted)). Defendants' objection to Mr. Beasley's affidavit is due to be overruled.

## 2. *Garrett Inspection Reports*

In their opposition to Defendants' motion for summary judgment, the Beasleys attached home inspection reports by Brent Garrett, a branch manager for Custard Insurance Adjusters, Inc., who inspected the Beasleys' home. (Doc. # 22-4, at 27–47.) Defendants provide three arguments for why they object to the reports. First, because they are not authenticated and thus are inadmissible under Federal Rule of Evidence 901(b)(1). Second, because the Beasleys did not timely disclose Mr. Garrett as an expert and thus cannot rely on his expert opinion pursuant to Federal Rule of Evidence 702. And third, because Mr. Garrett's reports are inadmissible hearsay pursuant to Federal Rule of Evidence 801(c) and 802. (Doc. # 24, at 4–6.)

The Beasleys respond only to the second of these objections. They acknowledge that their expert witness disclosures were due by October 21, 2017 (*see* Doc. # 8, at 2 (Uniform Scheduling Order)), but seek the court's permission — or, given the after-the-fact nature of the request, its forgiveness — to make the expert disclosure out of time. (Doc. # 26, at 1.) According to the Beasleys, the only reason they were late with the disclosure is because *Mr. Carroll and 500 Finishes* waited until May 16, 2018, to disclose that Mr. Garrett was a potential person with knowledge of the case. (Doc. # 25, at 3.) They conclude that

"Plaintiffs should not be punished as a result of Defendants' failure to timely disclose such information as required." (Doc. # 25, at 3.)

That reasoning is persuasive, if true. But Defendants say the story is not true. According to them, "Plaintiffs were aware of Mr. Garrett's identity and they actually produced his estimate report in their document production served on June 30, 2017, which was four months before their expert disclosure deadline." (Doc. # 27, at 2 (emphasis omitted).) Defendants also submit copies of an email received *by the Beasleys* from an insurance claims specialist that included at least one of the Garrett reports. (Doc. # 27-1.) That email was received on August 20, 2016 — well before the disclosure deadline.

Rule 26(e) of the Federal Rules of Civil Procedure imposes on parties a continuing obligation to supplement their discovery disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). By their own version of events, the Beasleys did not seek to supplement their expert witness disclosures until July 2, 2018 — *after* the May 26, 2018, event by which they say they learned of Mr. Garrett's report; *after* they submitted that report as evidence in their June 21, 2018, brief; and *after* Defendants called them out on their tardiness.

Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Prieto v. Malgor*, 361 F.3d 1313, 1317–18 (11th Cir. 2004).

The parties obviously disagree that Plaintiffs' failure was substantially justified. Defendants do not contest, however, that, "at some point, Defendants and/or defense counsel knew of the existence and identity of Mr. Garrett and of the extent of his knowledge of the issues involving Plaintiffs' claims against Defendants, as well as the existence and substance of his reports of June 6, 2016 and August 16, 2016." (Doc. # 25, at 4.) This is not a case in which Defendants were blindsided by the Beasleys' reliance. Instead, Defendants themselves acknowledge that they received the reports well before the expert disclosure date, because their argument for disallowing the late disclosure is that the reports were sent to them *by the Beasleys* on June 30, 2017. (Doc. # 27, at 2.) Defendants simply contend that the Beasleys should have designated the documents as expert witness reports. And so they should have. But the late designation, if allowed, will still be submitted before the September 18, 2018 deadline for pre-trial disclosures, which is the timeline Rule 26(e)(2) provides for supplemental disclosures. (Doc. # 8, at 2.) Given that, and given that Defendants were already aware of both the identity of Mr. Garrett and the contents of his reports, the court

finds that the late disclosure was harmless and that Plaintiffs' motion to allow the supplemental disclosure is due to be granted.

This leaves Defendants' other arguments for objecting to the reports: that they are inadmissible because they are not authenticated and are hearsay. While Rule 56 no longer requires that documents presented in connection with a summary judgment motion invariably be authenticated, *cf.* Fed. R. Civ. P. 56(e) (2009 ed.), it does, as explained above, allow an objection "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), and the burden remains on the proponent to show otherwise.

Here, Plaintiffs have not responded to Defendants' objections except to say that they "were unable to locate Mr. Garrett . . . for the purpose of getting additional information from him so as to be able to provide the appropriate authenticated information prior to the date on which Plaintiffs' response to Defendants' Motion for Summary Judgment was due." (Doc. # 25, at 3.) This is not an adequate showing that their evidentiary submission will take an admissible form by trial, and it ignores entirely Defendants' hearsay objection. Thus, because Plaintiffs have shrugged off their burden, Defendants' objection to Mr. Garrett's

report will be sustained, and the court will not consider the reports in ruling on the present motion for partial summary judgment.

## B. **Motion for Partial Summary Judgment**

Of the twelve claims alleged in the Beasleys' complaint, Mr. Carroll seeks dismissal of them all, and 500 Finishes seeks dismissal of all but two: breach of contract (count 1) and negligent construction (count 4). Plaintiffs do not contest that Mr. Carroll should be completely dismissed. (Doc. # 22, at 4.) They also agree that counts 5 (wanton construction), 6 (negligent hiring, training and/or supervision), 7 (wanton hiring, training, and/or supervision), 8 (misrepresentation of a material fact), 9 (suppression of material facts), 10 (deceit), 11 (fraudulent deceit), and 12 (continuing fraud) may be dismissed. (Doc. # 22, at 4–5.)

This leaves only counts 2 and 3 in dispute: breach of warranty of workmanlike construction and breach of warranty of habitability. 500 Finishes contends that these counts must fail because (1) "Plaintiffs admitted in their deposition that they never received a *written or express* warranty from Defendants," (Doc. # 21, at 22), and (2) "Plaintiffs did not allow 500 Finishes to complete performance and, therefore, any breach of warranty claim against Defendants never accrued" (Doc. # 21, at 23 (emphasis omitted)).

As the Beasleys point out, the contract itself resolves the first objection.  500 Finishes expressly agreed that "[a]ll work shall be completed in a workmanship like manner and in compliance with all building codes and other applicable laws," and "warrant[ed] all work for a period of 12 months following completion or Owner taking possession."   (Doc. # 22-2, at 2–3 (Contractor Agreement).) Besides, the warranties of workmanlike construction and habitability are implied by law and need not be made express.  *See Turner v. Westhampton Court, LLC*, 903 So. 2d 82, 92–93 (Ala. 2004).  And while they can be disclaimed, *id.*, there is no evidence the parties did so here.

As for the accrual issue, 500 Finishes cites the Alabama Supreme Court's decision in *Stephens v. Creel* for the proposition that "in a contract action based upon a warranty to construct a house in a workmanlike manner, the cause of action accrues and the statute of limitations begins to run on the date the defendant completes performance."  429 So. 2d 278, 280 (Ala. 1983).  According to 500 Finishes, because it never completed the Beasleys' house, any warranty of workmanlike construction or habitability never accrued, and thus the Beasleys cannot find relief.

Read in context, though, it is clear that the Alabama Supreme Court's discussion in *Stephens* is about the statute of limitations, not the elements of a

claim — which really is 500 Finishes's argument.[3]  In *Stephens*, the court was faced with the question whether the statute of limitations for a construction warranty claim began to run (1) when the construction contract was entered into, (2) when the contract was breached, or (3) when damage to the house was discovered.  429 So. 2d at 279.  The court chose the second option:  "The statute of limitations does not begin to run upon the entering into of a contract, but when the contract is breached and a cause of action accrues."  *Id.* at 280 (citation omitted). The court's reasoning was simple: warranty actions sound in contract; the statute of limitations for contractual claims begins to run at the time of breach; and so it is that warranty actions also accrue at the time of breach.  *See id.* at 280–81.

The court then turned to the matter of when the breach occurred.  "By its very nature," the court explained, "it is the failure to *construct* the house in a workmanlike manner that constitutes the breach."  *Id.* at 280.  In the case before it, that failure was made manifest at the time the contractor completed the house.

> At the date of completion, there was allegedly a failure to construct the house in a workmanlike manner.  Specifically, plaintiffs say, the house was to have been built higher off the ground, or greater

---

[3] The same is true of the other cases 500 Finishes cites.  (Doc. # 21, at 22.)  *See Mitchell v. Richmond*, 754 So. 2d 627, 629 (Ala. 1999) (holding that plaintiff's warranty claims were time-barred by the six-year statute of limitations period, which started ticking "upon the completion of the building in regard to which the contractor or architect's work was done" (citation omitted)); *City of Birmingham v. Cochrane Roofing & Metal Co.*, 547 So. 2d 1159, 1167 (Ala. 1989) (affirming dismissal of warranty claim because lawsuit was filed "more than six years after the building was certified as complete," and thus was barred by the statute of limitations).

ventilation needed to be provided beneath the house, or plastic layers should have been placed over the ground. At that time the plaintiffs would have sustained damages measured by the difference between the fair market value of the property as it was constructed, and the fair market value of the property as it *should have been* constructed. At that point, the plaintiffs could have recovered an amount necessary to put the structure in the condition it would have been in if [the defendant] had properly completed performance of the construction contract.

*Id.*

Within this context, it made absolute sense for the court to make the statement that 500 Finishes now latches on to — that "in a contract action based upon a warranty to construct a house in a workmanlike manner, the cause of action accrues and the statute of limitations begins to run on the date the defendant completes performance." *Id.* But that does not mean a warranty claim can never accrue so long as the builder leaves a brick unlaid, any more than the same logic would dictate that other kinds of breach-of-contract actions cannot be had if a party fails to fully perform. It is just that, in the mine run of cases, the breach in a warranty action will not become ripe until the contractor steps back and declares the house — and thus his obligation — finished. Up until that point, there is still the possibility that he might fix that which would be considered breach if left untended, and that his performance might become perfect as well as complete.

So the focus is on breach, not completion. And "[w]here the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." *Id.* at 281 (emphasis omitted) (quoting *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1085). Here, 500 Finishes agreed to build the Beasleys' house in a workmanlike manner. That 500 Finishes did not finish the house cannot mean that it somehow delivered on that promise. Nor does it necessarily mean that it was excused from performance — only that such a defense is possible. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Snider*, 996 F. Supp. 2d 1173, 1176–79 (M.D. Ala. 2014) (ruling on insurance dispute concerning judgment awarded in Alabama state court against house builder found liable for implied breach-of-warranty and breach-of-contract claims where contractor left home unfinished and owners hired a new contractor to complete construction). But that issue cannot be resolved on the facts submitted. Accordingly, Defendants' motion for summary judgment is due to be denied on this point.

There is one more thing, though. The Beasleys bring claims for breach of both the warranty of workmanlike construction (count 2) and the warranty of habitability (count 3). But "[a]n implied warranty of habitability generally arises when someone purchases a new home from a builder/vendor. The plaintiffs did

not purchase a ready-built home; instead, they contracted with the defendant[s] to build a home on their own land . . . ." *Lowery v. Poore*, 447 So. 2d 801, 802 (Ala. Civ. App. 1984); *see Sims v. Lewis*, 374 So. 2d 298, 303 (Ala. 1979) (adopting implied warranty of habitability for "situations involving the sale of a new house by a builder-vendor"). If this is the kind of warranty of habitability the Beasleys insist they had, it is not clear they will be able to state a viable claim for relief. Consistent with Rule 56(f)(2), however, the court will give the parties time to address the issue since Defendants did not raise this as a ground for summary judgment in their motion.

## V. CONCLUSION

Accordingly, it is ORDERED that Defendants' motion for summary judgment (Doc. # 20) is GRANTED in part and DENIED in part. It is further ORDERED as follows:

1. Defendants' motion for summary judgment is GRANTED on all counts against Defendant John Carroll, and Mr. Carroll is DISMISSED as a party.

2. Defendants' motion for summary judgment is GRANTED as to Counts 5, 6, 7, 8, 9, 10, 11, and 12 against Defendant 500 Finishes.

3. Defendants' motion for summary judgment is DENIED as to Counts 2 and 3 against Defendant 500 Finishes. This leaves four counts remaining: breach

of contract (count 1), breach of warranty of workmanlike construction (count 2), breach of warranty of habitability (count 3), and negligent construction (count 4).

4.      Plaintiffs' motion to allow a supplemental expert witness disclosure (Doc. # 26) is GRANTED.

5.      Defendants' motion to strike (Doc. # 24) is construed as a Rule 56(c)(2) objection and SUSTAINED as to consideration of the Garrett inspection reports and OVERRULED as to consideration of Mr. Beasley's affidavit.

6.      The parties are on NOTICE that the court is considering granting summary judgment as to count 3 (breach of warranty of habitability) on grounds not raised by either party.  It is therefore ORDERED that any objecting party must file a response **on or before August 24, 2018**.

DONE this 13th day of August, 2018.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE